UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

KENTUCKIANA MEDICAL CENTER    )
LLC, et al.,                  )
                              )
                Plaintiffs,   )
                              )    Cause No.    4:05-CV-0086 SEB-WGH
         vs.                  )
                              )
CLARK COUNTY, INDIANA, et al.,)
                              )
                Defendants.

**ENTRY GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT,
GRANTING PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF, AND
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
DISMISS**

Plaintiffs Kentuckiana Medical Center LLC ("Kentuckiana") and Sunnyside Land

Company, LLC ("Sunnyside) (collectively, "Plaintiffs") individually seek to construct

short-term, acute-care hospitals in Clark and Floyd Counties, Indiana.  Compl. ¶¶ 30-35.

However, Clark and Floyd Counties have   each passed ordinances prohibiting additional

hospital construction while newly appointed task forces study the economic impact of

such construction, Ordinance No. 6-2005 and Ordinance 2005-VIII respectively

(collectively the "County Ordinances").  Clark and Floyd Counties maintain that

Plaintiffs' facilities will have a detrimental impact on the ability of their respective county

hospitals to provide services to indigent and uninsured individuals.  Plaintiffs claim that

their facilities will greatly benefit health care consumers in Southern Indiana and the

Greater Louisville market by increasing the health care options available and potentially lowering the cost of short-term, acute-care hospital services.

Plaintiffs allege in their complaint that the County Ordinances violate federal law because they are an impermissible agreement in restraint of trade, in violation of § 1 of the Sherman Act, and unconstitutionally vague, in violation of the Due Process Clause. Plaintiffs further assert the ordinances violate state law because Indiana does not authorize its counties to undertake such regulations under the Indiana Home Rule and Zoning Acts. Defendants deny Plaintiffs' claims and maintain their ordinances are permissible exercises of their home rule powers.

For the reasons elaborated below, we hold that Plaintiffs have properly asserted a valid § 1 Sherman Act claim, but have not pled a valid void-for-vagueness/Due Process claim, and therefore we DENY in part and GRANT in part Defendants' 12(b)(6) Motions to Dismiss and further DENY Clark County's 12(b)(1) Motion to Dismiss.  We also hold that, pursuant to the Indiana Home Rule Act, Clark and Floyd Counties do not have the power to prohibit healthcare competition in their respective counties, and therefore, we GRANT Plaintiffs' Motion for Summary Judgment and DENY Floyd County's Rule 12(b)(6) Motion to Dismiss Plaintiffs' state law claims.  See, Footnote 4, infra.  We decline to resolve Plaintiffs' Zoning Act claim since it has been mooted by our ruling on the Home Rule Act claim.  Finally we GRANT Plaintiffs' Motion for Injunctive Relief.[1]

---

[1] In light of our ruling on Plaintiffs' Motion for Summary Judgment and the fact that

(continued...)

2

## __Factual Summary__

1.    *Plaintiffs' Plan to Construct Hospitals in Clarksville, Jeffersonville, and New Albany.*

Kentuckiana has a lease with an option to purchase real property within the corporate limits of the Town of Clarksville, Indiana ("Clarksville") upon which Kentuckiana presently intends to build a short-term acute-care hospital.  Clarksville is located in Clark County.  Sunnyside owns real property with the corporate limits of the City of Jeffersonville, Indiana ("Jeffersonville") upon which Sunnyside presently intends to build a short-term acute-care hospital.  Jeffersonville is also located in Clark County.  Kentuckiana has a lease with an option to purchase real property within the corporate limits of the City of New Albany, Indiana ("New Albany") upon which Kentuckiana intends to build a short-term acute-care hospital.  New Albany is located in Floyd County.

The town of Clarksville and the cities of Jeffersonville and New Albany have each established their own advisory plan commission as provided in Ind. Code § 36-7-4-202(a).

2.    *Alleged Conspiracy between Clark and Floyd County.*

Plaintiffs allege that Defendants, Clark County and Floyd County, upon learning

---

[1](...continued)

neither party can obtain further judicial relief through resolution of the single remaining claim, an alleged violation of §1 of the Sherman Act, the following related pending motions are hereby **GRANTED**: Jewish Hospital Health Care Services, Inc.'s Motion to Quash (Dkt. 30), Clark Memorial Hospital's Motion to Quash (Dkt. 34), and Plaintiffs' Motion to Strike Jury Demand (Dkt. 57); and the following related pending motions are hereby **DENIED:** Plaintiff's Motion to Compel (Dkt. 51) and Floyd County's Motion to Compel (Dkt. 53).

of Plaintiffs' plans, engaged in a concerted effort to insulate their county hospitals from competition by blocking the construction of any new short-term, acute-care hospitals in their counties. Plaintiffs contend that Clark County, by and through the Board of Commissioners of the County of Clark ("Clark County Commissioners"), and Clark Memorial Hospital ("Clark Memorial") agreed and conspired with Jewish Hospital Healthcare Services, Inc. ("Jewish Healthcare") to undertake steps to preclude the construction of new short-term, acute-care hospitals in Clark County. Id. ¶¶ 36-38. Clark Memorial Hospital is a county hospital established by the Clark County Commissioners pursuant to Indiana law. Id. ¶ 16. Plaintiffs maintain that Jewish Healthcare through its regional ownership of sixty healthcare facilities is a direct competitor of Clark Memorial in the provision of short-term, acute-care hospital services. See id. Similarly, Plaintiffs assert that Floyd County, by and through the Board of Commissioners of the County of Floyd ("Floyd County Commissioners"), and Floyd Memorial Hospital ("Floyd Memorial") also undertook steps to preclude construction of a new short-term, acute-care hospital in Floyd County. Id. ¶ 45.

Plaintiffs claim that, in an effort to ensure that neither county hospital would be disadvantaged by competition in the neighboring county, Defendants in conjunction with Clark Memorial, Floyd Memorial, and Jewish Healthcare conspired and agreed to limit competition in their respective counties through enactment of ordinances imposing moratoria on the construction of new private hospitals. Id. ¶¶ 52, 53. Plaintiffs allege that in furtherance of the conspiracy, Clark Memorial and Floyd Memorial cooperated in

4

the drafting the ordinances. Id. ¶ 52. Each ordinance was purportedly adopted pursuant to the home rule and general police powers granted Defendants under Indiana law. Compl. ¶¶ 40, 47.

       3.    *Clark County Ordinance.*

Clark County, through the Clark County Commissioners, passed an ordinance on or about February 24, 2005, placing a temporary moratorium on new hospital construction in the county ostensibly to give the county time to study the impact of such construction on the ability of the county-sponsored Clark Memorial to continue to provide health services to indigent and uninsured persons. See Exhibit A to Compl., Ordinance No. 6-2005, ("Clark County Ordinance").

In the Clark County Ordinance, the Clark County Commissioners maintain that healthcare costs in the county have risen and that "those increased costs may be attributable in part to the proliferation of hospitals and other health care facilities." Id. at 2. The Commissioners determined "that the proliferation of hospitals and other health care facilities may undermine the effective delivery of health care, diminishing the health and welfare of Clark County residents, resulting in costly duplication of services and a decline in the use of the services provided by Clark Memorial." Id. at 2. The Commissioners also expressed concern "that the proliferation of hospitals and other health care facilities will have an adverse effect on the effective delivery of quality health care by [Clark Memorial], including health care to the indigent and low income residents." Id. The Clark County moratorium on new hospital construction expires two

years after the effective date of the Ordinance.  Id. at 3.

The Clark County Ordinance prohibits Kentuckiana and Sunnyside from constructing or seeking to construct their respective hospitals in Clarksville and Jeffersonville until, at the earliest, February 24, 2007

4.    *Floyd County Ordinance.*

Floyd County, through the Floyd County Commissioners, enacted a similar ordinance on or about March 29, 2005,[2] purportedly to allow time to assess the impact of new hospital construction in Floyd County on Floyd Memorial.  See Exhibit B to Compl., Ordinance 2005-VIII ("Floyd County Ordinance").  The Floyd County Commissioners expressed concern that new hospital construction "would undermine the viability of Floyd Memorial, impede its ability to effectively deliver health care services, and ultimately adversely affect the availability of quality health case services to all of the citizens of Floyd County, including the poor, elderly, disabled and/or the minority members of the community."  Id. at 1.  The Floyd County moratorium expires one year after the effective date of the Ordinance.  Id. at 4.  The Floyd County Ordinance contains an exception procedure, whereby an applicant can obtain relief from the moratorium if it demonstrates to the Commissioners that a proposed facility will not unduly compromise the financial health of, or quality of care at, Floyd Memorial.  See Article V, id. at 4-5.  Neither Plaintiff alleges that it has submitted an application under this exception

_____

[2] At oral argument, Plaintiffs' counsel suggested that the genesis for the two ordinances came from Floyd County although Clark County actually passed its Ordinance first.

6

procedure.[3]

The Floyd County Ordinance prohibits Kentuckiana from constructing or developing its hospital in New Albany until, at the earliest, March 29, 2006, unless granted an exception by the Commissioners.

5.    *Relevant Healthcare Market.*

The Complaint alleges that these ordinance have excluded Plaintiffs from the "Greater Louisville market" for "short-term, acute-care hospital services," or alternatively "acute-care hospital services." See Id. ¶¶ 63-65.  The Complaint alleges that the "Greater Louisville market" is comprised of seven counties in northern Kentucky and southern Indiana.  Id. ¶ 54.  The Complaint further alleges there are 14 short-term acute-care hospitals already in existence serving consumers in that market.  Id. ¶ 58.

## Legal Analysis

There are four pending dispositive motions in this case: three Motions to Dismiss filed by Defendants and one Motion for Summary Judgment filed by Plaintiffs.  Although the separate motions all involve similar, interrelated legal issues, in our view the most coherent way to resolve these issues is to address the pending motions separately.  Thus, we begin our analysis by addressing Defendants' Motions to Dismiss Plaintiffs' federal claims–the Sherman Act § 1 anti-trust violation and due process/void for vagueness

---

[3] At oral argument, Plaintiffs' Counsel stated that through discovery it has uncovered evidence concerning the operation of Floyd County's exception procedure; however, such evidence was never provided to the Court.

challenge–brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Then we shall turn to Clark County's Rule 12(b)(1) Motion to Dismiss Plaintiffs' state law claims challenging the two County Ordinances on the grounds that they are in violation of Indiana's Home Rule and Zoning Acts. Finally, we shall address Plaintiffs' Motion for Summary Judgment on their state law claims.[4]

## I.    Defendants' Rule 12(b)(6) Motions to Dismiss Analysis.

### A.    Rule 12(b)(6) Standard of Review.

Rule 12(b)(6) permits the dismissal of a claim for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).[5] A party moving to dismiss bears a weighty burden. It must show that the pleadings themselves fail to provide a basis for any claim for relief under any set of facts. Ed Miniat, Inc. v. Globe Life Ins. Group Inc., 805 F.2d 732, 733 (7th Cir. 1986), cert. denied, 482 U.S. 915 (1987).

As a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. Owner-Operator Indep. Drivers

---

[4] Floyd County also moved, pursuant to Rule 12(b)(6), to dismiss Plaintiffs' state law claims. As the arguments raised by Floyd County in their motion substantially overlap the arguments raised in Plaintiffs' Motion for Summary Judgment, we will resolve these issues together in our summary judgment analysis.

[5] Fed. R. Civ. P. 12(b)(6) provides:

> (b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted.

Ass'n v. Mayflower Transit, Inc., 161 F. Supp. 2d 948, 950–51 (S.D. Ind. 2001).  On a

Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we

construe all inferences that reasonably may be drawn from those facts in a light most

favorable to the party opposing the motion, in this case, Plaintiffs.  Lee v. City of

Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246 F.3d 1065,

1067 (7th Cir. 2001).

### B.    Plaintiffs' Sherman Act § 1 Anti-Trust Claim.

Section 1 of the Sherman Act broadly prohibits contracts, combinations, or

conspiracy in restraint of trade.[6]  Plaintiffs allege that the Defendants "conspired and

agreed to eliminate competition for short-term, acute-care hospital services in the Greater

Louisville market through enactment of the Ordinances."  Compl. ¶ 66.  The conspiracy

alleged here is that Clark Memorial and Floyd Memorial agreed and coordinated to

prevent Plaintiffs from building acute-care hospitals through the enactment of ordinances

passed by the county commissioners in their respective counties.

---

[6] Section 1 of Sherman act provides:

> Every contract, combination in the form of trust or otherwise, or
> conspiracy, in restraint of trade or commerce among the several States, or
> with foreign nations, is declared to be illegal. Every person who shall
> make any contract or engage in any combination or conspiracy hereby
> declared to be illegal shall be deemed guilty of a felony, and, on
> conviction thereof, shall be punished by fine not exceeding $100,000,000
> if a corporation or, if any other person, $1,000,000, or by imprisonment
> not exceeding 10 years, or by both said punishments, in the discretion of
> the court.

Although State governments are exempt from federal anti-trust laws,[7] the Supreme Court has held that federal anti-trust laws can be applied to actions taken by local governments. See City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389 (1978). In City of Lafayette, the Supreme Court explained:

> In 1972, there were 62,437 different units of local government in this country. . . . When these bodies act as owners and providers of services, they are fully capable of aggrandizing other economic units with which they interrelate, with the potential of serious distortion of the rational and efficient allocation of resources, and the efficiency of free markets which the regime of competition embodied in the antitrust laws is thought to engender. *If municipalities were free to make economic choices counseled solely by their own parochial interests and without regard to their anticompetitive effects, a serious chink in the armor of antitrust protection would be introduced at odds with the comprehensive national policy Congress established.*

Id. at 407-408 (emphasis added); see also id. at 412-413 ("In light of the serious economic dislocation which could result if cities were free to place their own parochial interests above the Nation's economic goals reflected in the antitrust laws . . . we are especially unwilling to presume that Congress intended to exclude anticompetitive municipal action from their reach."); Id. at 434 (holding that a "subordinate state

---

[7] See Parker v. Brown, 317 U.S. 341, 350-51 (1943):

> We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature. In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.

governmental body is not ipso facto exempt from the operation of the antitrust laws");

accord, Community Communications Co. v. City of Boulder, 455 U.S. 40 (1982).

Defendants assert that Plaintiffs have not pled a valid anti-trust claim under the

Sherman Act.  The specific grounds raised by Defendants are: (1) the actions of the

County Hospitals cannot be attributed to their respective counties thereby precluding an

agreement or conspiracy; (2) even if the County Hospitals' actions can be attributed to

their respective counties, the ordinances are protected from anti-trust challenge under the

state action immunity doctrine; (3) Clark County contends that we should undertake a

federal preemption analysis instead of an anti-trust analysis; (4) Floyd County argues that

the two ordinances are not similar enough to constitute an "agreement" between the two

Defendant counties; (5) Floyd County maintains that the claim against it is not ripe for

judicial intravention because the Floyd County ordinance has a procedure for applying for

an exemption, which Plaintiffs failed to utilize; and (6) Floyd County asserts that the

competitive exclusion from only two of the seven counties in the greater Louisville

market cannot support an anti-trust claim as a matter of law.  We find none of these

contentions to be persuasive for the reasons explained below, addressing each argument

in turn.

### (1)     Attribution of the Actions of the County Hospitals to Their Respective Counties.

To properly plead a claim under §1 of the Sherman Act, Plaintiffs must allege a

conspiracy between two separate entities.  See  Fisher v. City of Berkeley, Cal.,  475 U.S.

260, 266-67 (1986).  In <u>Fisher</u>, the Supreme Court explained:

> The distinction between unilateral and concerted action is critical here. Adhering to the language of § 1, this Court has always limited the reach of that provision to "unreasonable restraints of trade effected by a 'contract, combination ..., or conspiracy' between separate entities." <u>Copperweld Corp. v. Independence Tube Corp.</u>, 467 U.S. 752, 768 (1984) [emphasis omitted]. We have therefore deemed it "of considerable importance" that independent activity by a single entity be distinguished from a concerted effort by more than one entity to fix prices or otherwise restrain trade, <u>Monsanto Co. v. Spray-Rite Service Corp.</u>, 465 U.S. 752, 763 (1984). Even where a single firm's restraints directly affect prices and have the same economic effect as concerted action might have, there can be no liability under § 1 in the absence of agreement.  <u>Id.</u>, at 760-761; <u>United States v. Parke, Davis & Co.</u>, 362 U.S. 29, 44, 80 S.Ct. 503, 511, 4 L.Ed.2d 505 (1960).

<u>Id.</u>

Plaintiffs have alleged that Floyd and Clark County conspired together, through their County Hospitals, to restrain trade.  Since there are no allegations that the two counties conspired directly, the only way Plaintiffs' claim can survive is by finding that the actions of the County Hospitals are attributable to their respective counties.[8]

---

[8] The actions of the County Hospitals cannot be attributed to their respective counties under a co-conspirator theory between the hospital and its own county commissioners because of the <u>Noerr-Pennington</u> doctrine.  As the Seventh Circuit explained in <u>Tarpley v. Keistler</u>, 188 F.3d 788, 794 (7th Cir. 1999):

> The First Amendment provides that the government cannot abridge the right of the people to "petition the Government for a redress of grievances." U.S. CONST. amend. 1. . . .  Thus, parties may petition the government for official action favorable to their interests without fear of suit, even if the result of the petition, if granted, might harm the interests of others. <u>See United Mine Workers of America v. Pennington</u>, 381 U.S. 657, 670 (1965); <u>Eastern R.R. Presidents Conference v. Noerr Motor</u>

(continued...)

Defendants contend that because the County Hospitals are legally distinct entities, their actions cannot be attributed to their respective counties.  Our analysis of this case has been made significantly more difficult by Defendants' failure to clarify, either in their numerous submissions or during oral argument, what the precise legal relationship between the Defendants Counties and their respective county hospital actually is.[9] Considered alone, Defendants' failure to clarify their relationship should doom their challenge since they have failed to show there is no basis for relief under any set of facts, see Ed Miniat, Inc. v. Globe Life Ins. Group Inc., 805 F.2d 732, 733 (7th Cir. 1986), cert. denied, 482 U.S. 915 (1987).  However, we shall undertake a brief analysis of Indiana law with respect to county hospitals which discloses the untimeliness of Defendants' procedural challenge.

County hospitals in Indiana are created pursuant to Ind. Code § 16-22 et seq. Under Indiana law, a county hospital is defined as a "Municipal corporation" or "Political subdivision,"  Ind. Code §§ 36-1-2-10 and 13, which is controlled by a "governing board"

---

[8](...continued)
Freight, Inc., 365 U.S. 127, 137-44 (1961). This so-called Noerr-Pennington immunity recognizes both the reach of the First Amendment right to petition and the limited ability of Congress to fetter that right.

[9] At oral argument, Plaintiffs' counsel asserted: "If you look at the bylaws for Floyd Memorial Hospital and Healthcare Services on the first page for example, it says Floyd Memorial Hospital and Healthcare Services is owned by Floyd county."  Hearing Transcript p. 9. Plaintiffs' counsel also explained that "[Clark Memorial] has been set up as a separate nonprofit corporation but is controlled by the county."  Id.  Defendants have neither confirmed nor denied these assertions.

13

(the "hospital board") and serves as "the supreme authority in a hospital and is responsible for the management, control, and operation of the hospital."  Ind. Code § 16-22-3-1.  The legal status of the board is "a body corporate and politic . . . .",  Ind. Code § 16-22-3-24, which can sue and be sued and possess the real and personal property of the hospital and the hospital's funds.  Ind. Code § 16-22-3-24.[10]

Under Indiana law, the county commissioners exercise substantial powers with respect to the establishment, oversight, control, and dissolution of their respective county hospital(s).  First and foremost, a county hospital is established by the county executive,[11] and the hospital board is entirely appointed by the county executive.  Ind. Code 16-22-2 et. seq.  Each year, the hospital board must file an annual financial statement with its respective county executive and the county fiscal body, Ind. Code § 16-22-3-12.  Upon the sale of a county hospital's real property, the respective county commissioners, along with the hospital board, must execute a deed of conveyance to the purchaser.  Ind. Code § 16-22-3-17(c)(3).  A county hospital cannot be dissolved or sold to a for-profit corporation without a joint resolution by the board, county executive, and county fiscal body, Ind. Code § 16-22-3-17(e), and the proceeds from such a sale are controlled by the

--------

[10] The Supreme Court had occasion to examine the definition of the term "body corporate and politic" in Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989), citing numerous sources defining the term as a "public corporation" or a "corporation with having the powers of government."  See Id. 70 n.9 (1989).  Similarly, the current edition of Blacks Law Dictionary, 7th Edition, 1999, defines body politic as: "A group of people regarded in a political (rather than private) sense and organized under a single governmental authority."

[11] The County Commissioners are the county executive in Clark and Floyd Counties. Ind. Code § 36-2-2-2.

county commissioners.  Ind. Code § 16-22-3-17(j).  Similarly, the assets of a county hospital cannot be transferred to a non-profit corporation without a joint resolution by the board, county executive, and county fiscal body,  Ind. Code § 16-22-3-18(a), and the proceeds from such a transfer are controlled by the county executive.  Ind. Code § 16-22-3-18(e).

In addition, county hospitals enjoy several powers allowed county government. County hospital boards have the power of eminent domain, as exercised through their respective county commissioners.  Ind. Code § 16-22-3-25.  County hospital boards can be supported by a tax levy from their respective counties, Ind. Code § 16-22-3-27, and a hospital board can enter into a sublease or loan agreement with a state agency whereby part of the lease or loan payment is payable through taxes from the respective county. Ind. Code § 16-22-3-27.5.[12]

These statutory provisions reveal a substantial entanglement of interest, control, and power between the county commissioners and a county hospital board.  Additionally, these statutes demonstrated that many ways, including, it appears, in the case at bar,[13] a unitary economic interest exists between the county and its hospital.  At the least, these interrelationships support an inference that a county hospital and its respective county can

_____

[12] Moreover, the county is required to pay its portion of the loan or lease payment even if the hospital board cannot make its payments.  Ind. Code § 16-22-3-27.5(e).

[13] The language of the two County Ordinances reveal that the Clark and Floyd County Commissioners were particularly concerned with the continued financial viability of the their respective county hospitals.

constitute a single economic actor for purposes of an anti-trust analysis, thereby

attributing the actions of a county hospital to its respective county commissioners.  See

Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246

F.3d 1065, 1067 (7th Cir. 2001).[14]

Accordingly, we conclude that Defendants have failed to meet their 12(b)(6)

burden to show that under no set of facts can the actions of a county hospital be attributed

to its county commissioners; therefore, for now, we must and do assume that the actions

of a county hospital can lawfully be attributable to its respective county.

**(2)    State-Action Immunity Analysis.**

If the actions of the County Hospitals are determined to be attributable to their

respective counties, both Defendants have argued that their respective ordinances are

entitled to state-action immunity, pursuant to Parker v. Brown, 317 U.S. 341 (1943).

Plaintiffs counter that state-action immunity does not apply to these ordinances because

--------

[14] Although the parties expend considerable effort debating whether the holding in
Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984) applies to this case, we
decline to undertake an extensive Copperweld analysis.  We briefly note the essential holding of
Copperweld–that "the coordinated activity of a parent and its wholly owned subsidiary must be
viewed as that of a single enterprise for purposes of § 1 of the Sherman Act."  Copperweld, 467
U.S. at 771.  This is so because "[a] parent and its wholly owned subsidiary have a complete
unity of interest[, and t]heir objectives are common, not disparate; their general corporate actions
are guided or determined not by two separate corporate consciousnesses, but one."  Id.  We
recognize that this language suggests that similar reasoning could apply in the case at bar but we
decline to go farther for several reasons.  First, at this stage in the litigation we still lack a clear
understanding of the legal relationship between Clark and Floyd Counties and their respective
county hospitals, and do not regard this ruling as the appropriate setting in which to undertake
that analysis.  Second, neither party has provided a case applying the Copperweld analysis to a
government subunit, and we have found no such case, which would require us to plow new legal
ground on a factually deficient basis.

Indiana has not adopted a clearly articulated state policy to displace competition in health

care services.

In Fuchs v. Rural Elec. Convenience Co-op. Inc., 858 F.2d 1210 (7th Cir. 1988),

the Seventh Circuit laid out the appropriate standard for applying Parker state-action

immunity to a municipal ordinance, as follows:

> Municipalities exist under the laws of a state, but are not sovereign
> in and of themselves.  Town of Hallie v. City of Eau Claire, 471 U.S.
> 34, 38 (1985). The Court has therefore held that to be immune from
> the antitrust laws municipalities must be acting pursuant to a "clearly
> articulated and affirmatively expressed" state policy to displace
> competition. California Retail Liquor Dealers Ass'n v. Midcal
> Aluminum, Inc., 445 U.S. 97, 105, (1980). *The state policy need not
> compel the municipality to take the challenged action; it is enough
> that anticompetitive effects are reasonably foreseeable consequences
> of the state's grant of authority.* Hallie, 471 U.S. at 42, 105 S.Ct. at
> 1718. Nothing more is required to ensure confidence that the acts of
> a municipality should be shielded as acts of the state, because a
> municipality lacks the attributes and incentives of private actors, and
> does not pose the danger of private price-fixing that the antitrust
> laws were intended to prevent.

Id. at 1214 (footnote omitted) (emphasis added).[15]  Moreover, "the requirement of 'clear

articulation and affirmative expression' is not satisfied when the State's position is one of

---

[15] See, also, Campbell v. City of Chicago, 823 F.2d 1182, 1184 (7th Cir. 1987):

> [I]n Town of Hallie v. City of Eau Claire, 471 U.S. 34 (1985), the Court
> held that a municipality could obtain the exemption, if its challenged
> conduct was authorized by the state legislature, and if the anticompetitive
> effects were a foreseeable result of the authorization. . . . *The state
> legislature does not have to explicitly authorize the anticompetitive
> conduct . . . so long as the anticompetitive effects would logically result
> from the authority to regulate . . . .* (internal citations omitted) (emphasis
> added).

17

mere neutrality. . . since the term, 'granted,' necessarily implies an affirmative addressing of the subject by the State." <u>Community Communications Co., Inc. v. City of Boulder, Colo.</u>, 455 U.S. 40, 55 (1982).

Our task here is to determine if the Clark and Floyd County ordinances were somehow foreseeable from the various Indiana Code provisions addressing a county's authority to intervene in the health care market.

Defendants argue that their ordinances were reasonably foreseeable consequences of Indiana's policy to allow counties to displace health care competition. Defendants point principally to Ind. Code § 36-8-2-5, which grants counties the option to "provide medical care or other health and community services to persons" as well as permits counties to "establish, aid, maintain, and operate hospitals." Defendants also cite Ind. Code § 16-33-11, 12, and 13 et seq., which allows a county to provide financial assistance to hospitals providing health care services for the benefit of the county's residents. Although each chapter sets out separate requirements for when financial assistance can be provided, what form the financial assistance takes, and how the funds can be used,[16] all

---

[16] For example, Chapter 11 applies only in counties "without a general county hospital," Ind. Code § 16-22-11-1, and provides a "county may issue bonds or make appropriations from the county treasury," Ind. Code § 16-22-11-2; Chapter 12 applies only in counties that do "not own and operate a hospital *or* provide adequate hospital care," Ind. Code § 16-22-12-1(2) (emphasis added), and allows a county to "make an appropriation form the county treasury" and to "levy a special tax. . . on all taxable property located in the county," Ind. Code § 16-22-12-3; and Chapter 13 applies only to counties in which "there is no other city or public hospital," Ind. Code § 16-22-13-3, authorizing such a county merely to "appropriate money."

All three chapters impose limitations on a county to assist only nonprofit or municipal hospitals and to provide such hospitals only financial assistance.

three chapters limit counties' assistance only to nonprofit or municipal hospitals and limit the kind of permissible assistance to financial assistance. Defendants also invoke the Indiana Code provisions allowing counties to create and operate county hospitals, Ind. Code 16-22-3 et seq. These provisions also grant counties broad powers to affirmatively assist or subsidize county hospitals, for example, through eminent domain or tax levies. Ind. Code §§ 16-22-3-25, 27.

The above-cited statutes establish that Indiana has a clearly articulated policy of allowing counties to support a county, municipal, or nonprofit hospital in order to help meet the healthcare needs of its residents; however, no where is there any indication in any of these code provisions that a county's authority extends to prohibiting or even affirmatively inhibiting such a hospital's competitors.[17] The cited code provisions uniformly grant a county the authority to provide substantial assistance to a qualifying hospital through various subsidizes, which appear aimed at helping such a hospital offset

---

[17] Defendants would have us read the word "aid." as found in Ind. Code § 36-8-2-5, to include virtually any action undertaken by a county for the benefit of a hospital. We decline to adopt such an expansive construction for several reasons. First, Ind. Code § 36-1-3-6(a) states that "[i]f there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner." To read the statutes any other way would render Article 22 of Title 16 meaningless since a county could choose to bypass its restrictions by relying on the broad grant of authority in Ind. Code § 36-8-2-5. Such an interpretation would be contrary to the established rules of statutory interpretation. See U.S. v. Michalek, 54 F.3d 325, 335-36 (7th Cir. 1995) (explaining: "Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.") (quotation omitted). Accordingly, we decline to read the grant of authority in Ind. Code § 36-8-2-5 outside the context and boundaries established in Ind. Code Title 16 Article 22.

the cost of providing medical care to the county's residents, but none of these provisions includes a grant of authority to a county to regulate the broader healthcare market[18] or to inhibit competitors of its county hospital.  In addition, no such sweeping regulatory powers are reasonably foreseeable consequences flowing from of the state's authorization to provide financial assistance or eminent domain to benefit a county hospital.  Accordingly, we conclude that Defendants have not demonstrated that they are entitled to anti-trust immunity under the state action doctrine.

### (3)     Inapplicability of Federal Preemption Analysis.

Clark County incorrectly asserts that we should analyze the Plaintiffs' Sherman Act claim under the federal preemption doctrine, citing several cases in which the Supreme Court performed such a preemption analysis, see, e.g., Fisher v. City of Berkeley, Cal., 475 U.S. 260 (1986); Rice v. Norman Williams Co., 458 U.S. 654  (1982).  However, these cases, are readily distinguishable in view of the fact that the Supreme Court performed the preemption analysis only in response to specific *federal preemption claims brought by Plaintiffs* against the challenged ordinances.  See, e.g., Fishers, 475 U.S. at 264 ("Appellants . . . claim that . . . the regulatory scheme established by the

---

[18] Defendants point to Ind. Code § 16-22-13-1 as authority permitting a county to influence the operations of private hospitals.  This provision provides that, in a county that does not have a county public hospital, the County Commissioners may appropriate money directly to aid a non-profit hospital, provided that the recipient hospital agrees to certain conditions; however, the county's grant of authority is limited to subsidizing hospitals which agree to the conditions (in essence to operate for the benefit of the residents of that county).  Nothing in this provision can be fairly read to indicate that a county is otherwise empowered to regulate or manipulate the health care market.

Ordinance, on its face, conflicts with the Sherman Act and therefore is preempted.");

Rice, ("The Court of Appeal[s] agreed with respondents that the . . . statute on its face

conflicted with § 1 of the Sherman Act. . . . ").  In the case at bar, Plaintiffs have not

asserted a federal preemption, claim making the cases cited by Defendants inapposite.

Defendants have provided no authority for our conducting a "federal preemption"

analysis as the template for addressing Plaintiffs' § 1 Sherman Act claim, nor has our

search turned up any such directive.  To the contrary, the Seventh Circuit and the

Supreme Court have repeatedly engaged in the state action analysis (e.g, Parker

immunity) to resolve antitrust claims against municipal organizations.

### (4)     Alleged Lack of Agreement Between the Counties.

Floyd County contends that Plaintiffs' Sherman Act claim must fail because there

was no agreement between the Defendant counties as evidenced by the fact that the two

ordinances were so different from one another.  Specifically, Floyd County references

that the Clark County Ordinance has a two year prohibition on building hospitals, with no

option for exceptions, whereas the Floyd County Ordinance has a one-year prohibition

and the possibility of exceptions.

While Floyd County's argument may ultimately prove true, at the motion to

dismiss stage we draw all inferences in favor of the Plaintiffs, who have alleged that there

was a conspiracy between Clark and Floyd Counties to prevent the building of new

hospitals in both counties.  More specifically, Plaintiffs allege that Clark Memorial and

Floyd Memorial conspired to have ordinances passed in each of their respective counties

and that the two hospitals cooperated in the formulation of those ordinances.  None of the

parties disputes that the two counties passed ordinances approximately one month apart

imposing moratoria on building new hospitals, incorporating the same stated purpose, and

containing in major respects identical language.  Although there are admittedly some

substantial differences between the two ordinances, we conclude they are similar enough

to support an inference that an agreement existed between the two counties to enact

similar restrictions, which is all that necessary at this stage of the litigation.

**(5)    Alleged Lack of Ripeness of the Claim Against Floyd County.**

Floyd County contends that Plaintiffs' anti-trust claims are not ripe because the

Floyd County ordinance contains a provision for applying for an exception to the

ordinance which option has not been pursued by Plaintiffs.  In support of its contention,

Floyd County cites <u>Unity Ventures v. County of Lake</u>, 841 F.2d 770, 775-76 (7th Cir.

1988) (noting the Ninth Circuit's holding that when a plaintiff seeks to rely on a "futility"

exception to avoid exhausting his administrative remedies, futility can not be established

"until at least one meaningful application has been made") (citations omitted)

Our reading of <u>Unity Ventures</u> convinces us that its holding does not control here.

The more appropriate guidance in analyzing the claims raised by Plaintiffs is instead laid

out in <u>Triple G Landfills, Inc. v. Board of Com'rs of Fountain County, Ind.</u>,  977 F.2d

287, 290 (7th Cir. 1992).  In <u>Triple G</u>, the Seventh Circuit explained:

> Inquiries into ripeness generally address two factors: first, whether
> the relevant issues are sufficiently focused so as to permit judicial
> resolution without further factual development; and, second, whether

22

the parties would suffer any hardship by the postponement of judicial action.

Here, the first factor weighs heavily in favor of finding this case ripe for judicial review.  Admittedly, Triple G has not yet submitted a permit application to the County. Were this a regulatory takings case, Triple G most likely could not have brought suit until the appropriate administrative body, here the County, rendered a final decision on its application. . . . This lawsuit, however, mounts a facial attack upon the validity of the ordinance itself, not a challenge to a particular administrative decision reached thereunder.  The issues posed are purely legal . . . and would not be clarified by administrative proceedings or any other type of factual development. As such, the case is fit for judicial decision.

The second factor, hardship to the parties of delaying review, poses a slightly more subtle problem, whose resolution requires that we first ascertain the scope and practical effect of the ordinance. . . .

Id. at 288-89 (internal citations omitted).

Applying the Seventh Circuit's reasoning in Triple G, we conclude that Plaintiffs' claims are indeed ripe for judicial determination.  As in Triple G, Plaintiffs' state law challenges to the County Ordinances are facial challenges to the validity of the ordinances under Indiana law and the federal anti-trust claim is premised on Defendants' conspiracy to prohibit competition, for which assertion the ordinances are important evidence.[19] None of these legal issues would be clarified by the completion of administrative proceedings.  In assessing the second factor, we lack sufficient evidence at this stage in the litigation to determine whether a delay in reviewing the ordinances would pose a

---

[19] The Due Process claim is dismissed, see, infra Section XXX.

23

hardship on the Plaintiffs, though Plaintiffs have vigorously asserted that delaying the review would cause them irreparable harm. Even without a fully developed factual record, we are convinced that Plaintiffs claims are ripe for judicial review and dismissal on that basis would be improvident.

**(6)    Alleged Necessity of Exclusion from Entire Relevant Market.**

Defendant Floyd County argues that Plaintiffs' Sherman Act claim must fail as a matter of law because Plaintiffs have not alleged that they were excluded from the entire relevant market, i.e. all seven counties in the greater Louisville area.  In making this argument, Floyd County cites Marrese v. American Academy of Orthopaedic Surgeons, 706 F.2d 1488 (7th Cir. 1983), vacated on other grounds on rehearing, 726 F.2d 1150 (7th Cir. 1984), reversed and remanded on other grounds, 470 U.S. 373 (1985), for the proposition that:

> An "indirect" effect, by which we mean one falling far short of complete exclusion from the market, will not support a per se attack on a boycott.

706 F.2d at 1496.  Floyd County contends: "It is well settled in this Circuit that an alleged 'group boycott' is illegal per se only if it is used to enforce a rule, policy or practice that is itself illegal per se." Vogel v. American Society of Appraisers, 744 F.2d 598 (7th Cir. 1984); Collins v. Associated Pathologists, 844 F.2d 473 (7th Cir. 1988); Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101 (7th Cir. 1984).

Putting aside the argumentative weakness in relying on selective quotations, the cases cited by Floyd County do not support its argument .  In particular, the Marrese

decision directly undercuts Floyd County's position.  In language left unaddressed by

Floyd County in its briefing, the Seventh Circuit explained:

> [T]his court held that boycotts cannot be deemed illegal per se on the basis of their impact on competitors rather than on the consuming public, *if there is no "direct effort to influence the supply of, or demand for, a competitor's product."* Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advertising Ass'n, Inc., 672 F.2d 1280, 1286 (7th Cir.1982).

Marrese v. American Academy of Orthopaedic Surgeons, 706 F.2d 1488, 1496 (7th Cir.

1983) (emphasis added).  In the case at bar, the *overt, explicit* intent of the challenged

ordinances is to directly influence the supply of hospital services in the respective

counties which would directly compete with the respective county hospitals.  Thus, under

the clear holding of Marrese, the County Ordinances could be deemed to be illegal per

se.[20]

Moreover, the County Ordinances could be construed to constitute per se

---

[20] Floyd County's reading of the Marrese decision is also inconsistent with the Supreme Court's later decision in Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co., which clarified the application of the per se rule in anti-trust analysis:

> The decision to apply the per se rule turns on "whether the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output ... or instead one designed to 'increase economic efficiency and render markets more, rather than less, competitive.' " Broadcast Music, Inc. v. Columbia Broadcasting System, Inc., 441 U.S. 1, 19-20 (1979) (citations omitted). See also National Collegiate Athletic Assn. v. Board of Regents of University of Oklahoma, 468 U.S. 85, 103-104 (1984) ("Per se rules are invoked when surrounding circumstances make the likelihood of anticompetitive conduct so great as to render unjustified further examination of the challenged conduct").

472 U.S. 284, 289-90 (1985).

violations of the Sherman Act as a horizontal agreement between competitors.  The

Seventh Circuit has recently reaffirmed that "[h]orizontal agreements among competitors,

including group boycotts, remain illegal per se."  Toys ""R"" Us, Inc. v. F.T.C., 221 F.3d

928, 936 (7th Cir. 2000).; see also Republic Tobacco Co. v. North Atlantic Trading Co.,

Inc., 381 F.3d 717, 736 (7th Cir. 2004) (stating: "Horizontal agreements, which have not

been alleged in this case, are illegal per se").  Since Plaintiffs have alleged that, for the

purpose of protecting themselves from competition, Clark Memorial and Floyd Memorial

conspired to restrict new hospital construction in their respective counties, we conclude

that such a agreement, if proven, could be determined to be per se illegal.  Accordingly,

Plaintiffs have properly pled their antitrust theories of relief in their complaint.

     Finally, in terms of Defendants' Motion to Dismiss the antitrust claims, Floyd

County's contentions are misplaced because certain of the cases it cites involve the

enforcement of otherwise innocuous agreements which only indirectly impacted

competition.  See  Vogel, 744 F.2d 598; Collins, 844 F.2d 473; Car Carriers, 745 F.2d

1101.  In contrast here, since the challenged ordinances have been alleged to directly

affect competition, Floyd County's cited authorities offer it no support.

     Having pled a valid §1 Sherman Act claim, Defendants' Motions to Dismiss this

claim are denied.[21]

---

[21] This holding should not be taken as a judicial determination that Plaintiffs' claim
should necessary be evaluated under the per se illegal analysis.  We merely determine that
Plaintiffs have pled a valid claim of a per se violation of § 1 of the Sherman Act.  The parties can
properly brief this issue, should a formal determination of this issue subsequently prove

(continued...)

**C.     Due Process (Void for Vagueness) Claim**:

Plaintiffs contend that the two County Ordinances are subject to constitutional

challenge on the grounds of vagueness because a determination of whether a facility

would violate the ordinances cannot be made until after the facility has been built.

Plaintiffs argue:

> Both ordinances define "hospital" as a facility licensed by the State
> Department of Health under Ind. Code § 16-21-2.14 As such, it is
> not clear on the face of the statute what a "hospital" is without
> knowing whether a facility has been or will have to be licensed by
> the State Department of Health. In other words, a person wishing to
> build a medical facility does not necessarily know when it is built
> whether it is a "hospital" because it cannot be licensed by the State
> Department of Health until after it is built. As such, the facility, after
> it is built, could later be found to be a hospital if it is licensed by the
> State Department of Health, and as such, violate the Ordinances.

Pls.' Resp. Brief in Opp. to Mot. to Dismiss at 28.

The Seventh Circuit in <u>Karlin v. Foust</u>, 188 F.3d 446 (7th Cir. 1999), laid out two

separate ways in which a plaintiff can succeed on a void-for-vagueness claim:

> First, a statute is void for vagueness if it fails to provide "fair
> warning" as to what conduct will subject a person to liability. <u>See,
> e.g., Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983) ("[T]he
> void-for-vagueness doctrine requires that a penal statute define the
> criminal offense with sufficient definiteness that ordinary people can
> understand what conduct is prohibited."); <u>see</u> <u>also</u> <u>Village of
> Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489,
> 498 (1982). Second, a statute must contain an explicit and
> ascertainable standard to prevent those charged with enforcing the
> statute's provisions from engaging in "arbitrary and discriminatory"

---

[21](...continued)
necessary.

enforcement. See Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972) (reasoning that in order to avoid vagueness a statute proscribing penalties for unlawful conduct "must provide explicit standards for those who apply them" so as to prevent "arbitrary and discriminatory enforcement").

Karlin v. Foust, 188 F.3d 446, 458-59 (7th Cir. 1999).

Plaintiffs' challenge appears to reflect the first prong of the void-for-vagueness standard; if so, it is clear that in the context of this litigation, Plaintiffs have had the "fair warning" they claim is lacking–that the County Ordinances are applicable to their planned facilities. For example, in at least twelve instances in their complaint, Plaintiffs profess their express intention to build a "hospital." See Compl. ¶¶ 6, 7, 9, 30, 31, 32, 33, 34, 35, 43, 51 and 56. Plaintiffs have also characterized their proposed facilities as "potential competitors" of Floyd Memorial and Clark Memorial. Compl. ¶ 68. Plaintiffs further allege in their complaint that they have had warning that building their proposed facilities would subject them to liability under the County Ordinances. Accordingly, we conclude that Plaintiffs have had the "fair warning" referenced in Karlin that they will be subjected to liability under the County Ordinances and their void for vagueness claim must be denied.

**III.    Rule 12(b)(1) Motion to Dismiss Analysis.**

Having determined that Plaintiffs' Sherman Act claim survives Defendants' Motions to Dismiss, pursuant to 28 U.S.C. § 1367, pursuant to our supplemental jurisdiction over Plaintiffs' state law claims, we shall deny Clark County's Rule 12(b)(1) Motion to Dismiss those state claims and proceed to an analysis and determination of

those issues.

## IV.    Motion for Summary Judgment Analysis.

Plaintiffs have moved for summary judgment on their state law claims arguing that the County Ordinances are invalid and unenforceable pursuant to the Indiana Home Rule Act and Indiana Zoning Act.  Defendants defend their ordinances on the grounds that they are valid exercises of their home rule powers.  The parties agree that as to these claims there are no disputed material facts which would preclude summary judgment.

### A.    Indiana Home Rule Analysis.

Enacted in 1980, the Indiana Home Rule Act abrogated the traditional rule that local government powers were limited only to  those expressly granted by state statute. City of Gary v. Indiana Bell Telephone, Co., 732 N.E.2d 149, 153 (Ind. 2000); Ind. Code § 36-1-3-4(a).  The Home Rule Act grants county governments "all powers granted it by statute" and "all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute."  Ind. Code §§ 36-1-3-4(b)(1) and (2).  The Home Rule Act further directs that: "Any doubt as to the existence of a power of a [county] shall be resolved in favor of its existence."  Ind. Code § 36-1-3-3(b).  These broad grants of power to local governments were intended to further the state's policy of "grant[ing] [counties] all the powers that they need for the effective operation of government as to local affairs." Ind. Code § 36-1-3-2.

Despite this broad grant of authority, the Home Rule Act nonetheless imposes two limits important to a resolution of this case.  First, the Home Rule Act mandates: "If there

29

is a constitutional or statutory provision requiring a specific manner for exercising a power, a [county] wanting to exercise the power must do so in that manner."  Ind. Code § 36-1-3-6(a).  Second, the Home Rule Act specifically withholds from local governments "[t]he power to regulate conduct that is regulated by a state agency, except as expressly granted by statute." Ind. Code § 36-1-3-8(a)(7). The Home Rule Act defines the term "regulate" to include licensing, inspecting, or prohibiting. Ind. Code § 36-1-2-15. However, even in the categories regulated by state agencies, a local government still may "'impose additional, reasonable regulations, and . . . supplement burdens imposed by non-penal state law, provided the additional burdens are logically consistent with the statutory purpose.'"  Indiana Dept. of Natural Resources v. Newton County, 802 N.E.2d 430, 433 (Ind. 2004) [hereinafter "DNR"] (quoting Hobble ex rel Hobble v. Basham, 575 N.E.2d 693, 697 (Ind. App.1991)).   "An impermissible conflict with state law will be found if the Ordinance seeks to prohibit that which a statute expressly permits."  DNR, 802 N.E.2d at 433 (internal quotation omitted).

In the case at bar, by state law, the Indiana Department of Health regulates the same conduct which the Clark and Floyd County Ordinances attempt to regulate.  Indiana statutory law specifically grants the authority to license and regulate hospitals to the Department of Health.  Ind. Code § 16-21-2-2.  Indeed, "No person, county, or other enumerated entity may establish, maintain, or operate a hospital without first obtaining a license to do so from the state health commissioner."  Ind. Code § 16-21-2-10. In addition, the Department of Health is directed to "carry out health planning and resources

30

development responsibilities and functions within Indiana" and in so doing the department is charged to "[f]oster competition." Ind. Code § 16-30-1-1.  As part of its health planning responsibilities, the Department of Health must submit annually, to the governor and to the general assembly, a report of the state's health needs, which addresses, on a county-by-county basis, the health needs of Indiana with regard to the provision of public health services, including services provided by municipal and county hospitals, and assess the adequacy of the existing number of beds in health care facilities and the need for any additional beds.  Ind. Code § 16-30-2-1.  In preparing its annual report, the State Department of Health is charged with consider a number of factors, including "[t]he availability of alternative, less costly, or more effective methods of providing services" and "[t]he competitive factors of the free enterprise system, with a goal of encouraging competition and efficiency in the utilization of health resources." Ind. Code § 16-30-2-2.

Because the Indiana Department of Health has been granted the specific authority to regulate hospitals and oversee the state's health planning needs, there is a clear presumption, pursuant to Ind. Code § 36-1-3-8-(a)(7), that any authority to regulate or prohibit hospitals has been withheld from Defendants.  In view of this broad grant of authority to a state agency, in order for Defendants' Ordinances to be considered a valid exercise of their home rule authority, there would have to be an express grant of authority in the Indiana Code to support Defendants' actions.  Defendants have not and, apparently,

cannot cite such a provision; we know of none either from our independent research.[22]

Second, Ind. Code § 36-8-2-5 does not explicitly authorize Clark and Floyd Counties to prohibit competition with their respective county hospitals. Pursuant to Ind. Code § 36-1-3-6(a), the provisions of Ind. Code § 36-8-2-5 must be read in the context of the constraints imposed by Ind. Code Title 16, Article 22, which establishes, in considerable detail, a county's powers respecting county hospitals; importantly, Article 22 contains no indication that a county has the authority to do more than provide financial assistance to a county hospital. See, supra, Section I(B)(2).

Third, contrary to the accepted rules of statutory interpretation, Defendants' proposed construction of Ind. Code § 36-8-2-5 would make meaningless the more recent, and significantly more substantial, provisions of Ind. Code Title 16, Article 22, which defines a county's powers to assist county hospitals. See U.S. v. Michalek, 54 F.3d 325,

---

[22] Defendants strenuously argue that the general grant of authority contained in Ind. Code § 36-8-2-5 provides support for their ordinances; however, a review of this provision shows it is clearly insufficient. First, the language of Ind. Code § 36-8-2-5 is far from the required express grant of power which would enable Defendants to prohibit hospital competition in their respective counties. Our colleague, Judge Hamilton, recently addressed this same argument which was advanced in an analogous case as support of a similar ordinance, holding as follows:

> As in Triple G Landfills, where the court found that the county did not gain authority from a charge to the state to "assist" counties in waste management, the authority to "aid" a county hospital is not an express grant of authority that warrants an additional and substantial permit process for conduct already subject to extensive regulation by the state.

Sisters of St. Francis Health Services, Inc. v. Morgan County, IN, 397 F. Supp. 2d 1032, 1054 (S.D.Ind. 2005) (citing Triple G Landfills, Inc. v. Board of Commissioners of Fountain County, 774 F. Supp. 528 (S.D. Ind. 1991)). We concur with Judge Hamilton's conclusion.

32

335-36 (7th Cir. 1995) (explaining: "Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.") (quotation omitted).

Fourth, Clark and Floyd Counties assert that their moratoria are necessary to give the newly created task forces time to examine the economic impact of additional hospitals on the provision of health care services by the respective county hospitals; this argument loses persuasive force in view of the fact that the State Department of Health's annual report is required by statute to include this specific topic. Indeed, Indiana statutes mandate the Department of Health, on a county-by-county basis, to address the provision of care by county hospitals, the need for additional hospital beds, the availability of alternative less costly or more effective methods of providing services, and the competitive factors of the free enterprise system. Ind. Code §§ 16-30-2-1 and 2.

Fifth, Defendants' interpretation of Ind. Code § 36-8-2-5 is clearly unreasonable. At oral argument, Defendants attempted to limit the application of this provision only to county governments' power to aid county hospitals; however, nothing in the statute supports this construction. This provision applies equally to cities as well as counties and does not restrict the type of hospitals that local governments units can "establish, aid, maintain, and operate." Moreover, the powers granted here are permitted to be exercised within a geographical range not to exceed four miles beyond the boundaries of a county or city. Ind. Code § 36-8-2-13. Assuming *arguendo* that Defendants' interpretation of

33

Ind. Code § 36-8-2-5 were correct, any city or county could prohibit construction of, or conversely permit itself to build, any hospital in an area not exceeding four miles outside its boundaries. Such an interpretation would create an unworkable system of potentially conflicting authority between and among the political subdivisions within the state. Indeed, in the case at bar, Clarksville, Jeffersonville, and New Albany could all presumably use their authority to construct the very same hospitals the County Ordinances prohibit. We decline to adopt such an unreasonable interpretation of the controlling statutes.

The County Ordinances are impermissible "supplemental burdens" on the exercise of the State's powers because the stated purposes of the ordinances make them inconsistent with the express statutory goal of promoting competition in the healthcare market and thus frustrate the achievement of that goal by the state. In numerous Indiana Code sections, the Indiana General Assembly has clearly indicated its preference for promoting healthcare competition. See, e.g., Ind. Code §§ 16-30-1-1 (the "state department shall . . . in [its] planning activities . . . [f]oster competition"); 16-30-2-2 (the department's annual report shall assess "the competitive factors of the free enterprise system, with the goal of encouraging competition and efficiency in the utilization of health resources"). Thus, the clear evidence establishes that, to the extent Indiana has granted the authority to regulate hospitals, such regulation is to be exercised in the service of fostering competition, not suppressing it. Clark and Floyd Counties' patent attempts to suppress competition by their respective ordinances conflict with this statutory purpose.

Thus, as in <u>DNR</u>, the "County ordinances do not 'supplement' any 'burdens' imposed by the state. Rather[,] . . . state law is frustrated by the county ordinance. . . . That is not within the County's power." <u>DNR</u>, 802 N.E.2d at 433.[23]

For these reasons, we determine that no express grant of authority in the Indiana Code authorizes a county to prohibit hospital construction, conduct which is otherwise broadly regulated by the state Department of Health. Accordingly, the County Ordinances are clearly outside the scope of powers vested in Clark and Floyd Counties under the Indiana Home Rule Act. <u>See</u> Ind. Code § 36-1-3-8(7).

## B.    Zoning Act Analysis.

Plaintiffs' final argument maintains that the County Ordinances are invalid exercises of Clark and Floyd Counties' planning and zoning powers, as enacted by the Indiana General Assembly. <u>See</u> Ind. Code § 36-7-4-201. Specifically, Plaintiffs contend that, pursuant to Ind. Code § 36-7-4-601, Clark and Floyd Counties have no authority to enforce zoning ordinances within the municipal jurisdictions of Clarksville, Jeffersonville, and New Albany, all of which have adopted their own zoning ordinances. Clark and Floyd Counties respond that their ordinances are not in actuality zoning

---

[23] Defendants also argue that the County Ordinances are necessary to protect the provision of healthcare services by their respective county hospitals, a recognized and approved function of local government, specifically citing to <u>Lex, Inc. v. Board of Trustees of Town of Paragon</u>, 808 N.E.2d 104 (Ind. App. 2004). However, as Judge Hamilton also noted in rejecting this same argument: "The court in <u>Lex</u> also emphasized that the mobile home ordinance served the same purpose  as the state's regulations, safety and sanitation. The [challenged county ordinance], by contrast, does not serve any articulated purpose of the state, but runs counter to state policy." <u>Sisters of St. Francis</u>,  397 F. Supp. 2d at 1055-56.

ordinances at all, but rather economic regulations authorized under the Home Rule Act. We have previously addressed Defendants' Home Rule contention and rejected it; as explained above, Clark and Floyd Counties do not have authority under the Home Rule Act to enact the County Ordinances.

Regardless of whose argument on this point we accept, the County Ordinances are invalid. We decline to address the matter further since to do so our analysis would necessarily be pinned to purely speculative and hypothetical factors (i.e., assuming Defendants possess powers they do not actually have, would exercising said powers violate the Indiana zoning statutes).[24]

### Conclusion

For all the reasons explicated above, we declare that Clark County Ordinance No. 6-2005 and Floyd County Ordinance 2005-VIII are invalid exercises of Clark and Floyd Counties' powers under the Indiana Home Rule Act and GRANT Summary Judgment in Plaintiffs' favor. A permanent injunction against enforcement of the Clark County and Floyd County Ordinances is hereby entered. Further, we hold that Plaintiffs have adequately pled a § 1 Sherman Act claim, but their void-for-vaguess/Due Process claim

---

[24] We briefly note that Defendants' assertion that the County Ordinances are not land use regulations necessarily means that the provisions contained therein allowing for injunctive relief, see Clark County Ordinance § 4(b); Floyd County Ordinance Article VI, are invalid. Under Indiana law, "[a] municipal corporation may bring a civil action to enjoin any person from: (1) violating an ordinance regulating or prohibiting a condition or use of property; or (2) engaging in conduct without a license if an ordinance requires a license to engage in the conduct." Ind. Code § 36-1-6-4. Since Defendants concede that their ordinances do not fall within either of these categories, Indiana law does not grant them the power to seek injunctive relief to enforce the County Ordinances.

fails.  Accordingly, Defendants' 12(b)(6) Motions to Dismiss are <u>GRANTED</u> in part and

<u>DENIED</u> in part, and Clark County's 12(b)(1) Motion to Dismiss is <u>DENIED</u>.  IT IS SO

ORDERED.


Date:  ___01/18/2006_____            _Sarah Evans Barker_____

                                           SARAH EVANS BARKER, JUDGE
                                           United States District Court
                                           Southern District of Indiana


Copy to:

Dwight Timothy Born
TERRELL BAUGH SALMON &
BORN LLP
tborn@tbsblaw.com

Jeanne Marie Bruns
TAFT STETTINIUS & HOLLISTER
LLP
bruns@taftlaw.com

Joseph C. Chapelle
BARNES & THORNBURG LLP
joe.chapelle@btlaw.com

Mark Jason Crandley
BARNES & THORNBURG LLP
mcrandley@btlaw.com

Dwight D. Lueck
BARNES & THORNBURG
dwight.lueck@btlaw.com

David J. Mallon JR
ICE MILLER LLP
mallon@icemiller.com

Scott D. Matthews
ICE MILLER LLP
scott.matthews@icemiller.com

Kendall H. Millard
BARNES & THORNBURG LLP
kmillard@btlaw.com

William C. Moyer
LORCH & NAVILLE, LLC
wmoyer@lorchnaville.com

Michael G. Naville
LORCH & NAVILLE, LLC
mnaville@lorchnaville.com

Gene Forrest Price
FROST BROWN & TODD
gprice@fbtlaw.com

Ernest W. Smith
SMITH BARTLETT HEEKE
CARPENTER THOMPSON &
FONDRISI
bills@smithbartlett.com

37

Daniel R. Warncke
TAFT STETTINIUS & HOLLISTER
LLP
warncke@taftlaw.com

Philip A. Whistler
ICE MILLER LLP
philip.whistler@icemiller.com